**Richard G. SMITH, Petitioner,**

v.

**Jim MABRY, Commissioner, Arkansas Department of Correction, Respondent.**

**No. PB–75–C–282.**

United States District Court, E. D. Arkansas, Pine Bluff Division.

Dec. 28, 1976.

Gary P. Barket, Howell, Price, Howell & Barron, Little Rock, Ark., for petitioner.

Jim Guy Tucker, Atty. Gen., Gary Isbell, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

The factual circumstances surrounding the above captioned habeas corpus case are rather complex. The petitioner was arrested on June 25, 1972, for the alleged burglary of a pharmacy in Osceola, Arkansas. Shortly thereafter, the petitioner was arraigned for burglary and grand larceny, and held in the Mississippi County jail to await his trial. On July 2, 1972, the petitioner escaped and fled to the state of Mississippi, where he was subsequently convicted of burglarizing a pharmacy in Walls, Mississippi, and sentenced to eighteen months in the Parchman Penitentiary. While serving this sentence, the petitioner learned that the State of Arkansas had

filed a detainer against him on March 5, 1973, for the alleged burglary of the Osceola pharmacy. In order to receive a speedy trial on these charges, the petitioner sought to follow the speedy trial requirements set forth in the Interstate Agreement on Detainers. Therefore, he mailed to the Osceola Clerk of Court, via certified mail, a petition for a writ of mandamus demanding that the State of Arkansas grant him a speedy trial. The return receipt indicated that his writ had been received by a "Geneva Sirco" on May 10, 1973. Despite this demand for a speedy trial, the petitioner was not returned to Arkansas until November 7, 1973. Because the petitioner was unable to meet his $10,000.00 "appearance bond", he was incarcerated in the Mississippi County jail until his trial on March 18, 1974. The jury found the petitioner guilty of burglary, but not guilty of grand larceny, and sentenced him to twenty-one years in the Arkansas Department of Correction.

The petitioner did not raise the speedy trial issue during his trial and elected not to take a direct appeal of his circuit court conviction to the Arkansas Supreme Court. Instead, the petitioner raised the speedy trial issue in a petition seeking post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. In the Rule 37 hearing, the circuit court found that the petitioner had not been deprived of his right to a speedy trial. This decision was appealed to the Arkansas Supreme Court and affirmed in *Smith v. State*, 528 S.W.2d 359 (Ark.1975). Having exhausted his state court remedies, the petitioner then filed this petition for a writ of habeas corpus.

This Court held an evidentiary hearing in this case on December 2, 1976. The only real issue presented at this hearing concerned whether the petitioner was denied his Sixth Amendment right to a speedy trial. At the conclusion of the hearing, this Court tentatively found that the petitioner had been tried within the time provided by § 43–1708 of the Arkansas Statutes Annotated [hereinafter cited § 43–1708]. However, the Court requested both parties to file briefs on the issue of whether there had

been a violation of the petitioner's Sixth Amendment right to a speedy trial. Such briefs have now been filed, and the issue is ready for determination.

The petitioner alleges that his right to a speedy trial has been violated vis a vis three independent standards which have been established to safeguard this right. First, the petitioner alleges that his trial was held after the 180-day period provided by the Interstate Agreement on Detainers. This Agreement in pertinent part provides the following:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and . . . there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he has caused to be delivered to the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment."

However, the time provided for a speedy trial in this Agreement is only binding on states which have ratified it. Since Mississippi is not a member of the Agreement, the Court need not reach the merits of this aspect of the petition.

Second, the petitioner contends that his trial was not held within the time prescribed by § 43–1708. This statute provides the following:

"If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense, which shall be held after the finding of such indictment, he shall be discharged so far as related to the offense for which he was committed, unless the delay shall happen on the application of the prisoner."

The Arkansas Supreme Court has construed this statute to mean that two terms of court must pass *in addition to the term of court in which the defendant is indicted.*

*Randle v. State,* 257 Ark. 232, 516 S.W.2d 6 (1974). The Arkansas Supreme Court has also held that when a person is incarcerated in some other state, he must affirmatively demand a trial in order to activate this statute. *State v. Davidson,* 254 Ark. 172, 492 S.W.2d 246, 248 (1973).

Considerable controversy exists concerning whether the petitioner made an effective demand for a speedy trial. The petitioner contends that his petition for writ of mandamus constituted such a demand, while the State argues that the petitioner never made such a demand because his petition was never received or filed in the Osceola office of the Clerk of Court.[1]

During the petitioner's evidentiary hearing, this Court reconsidered the question of whether the petitioner filed such a demand for a speedy trial.

Both the petitioner's court-appointed attorney and the state assistant attorney general indicated that there was no "Geneva Sirco" employed in the Clerk of Court's office in Osceola, Arkansas. Thus, the Court found that while the petitioner mailed his writ of mandamus, it was never received by the Clerk of Court. Based upon subsequent developments, the Court will reverse this finding.

Following the evidentiary hearing, the Court sought to independently ascertain the identity of the mysterious "Geneva Sirco." Approximately 15 minutes after instructing a clerk to make appropriate inquiry, the matter was resolved. The clerk located "Geneva Sirco" by reasoning that the scrawled "Sirco" on the return receipt might actually be "Sisco." The clerk then called the Osceola Clerk of Court and learned that Geneva Sisco was employed in that office as a deputy clerk. After informing the attorneys of this startling discovery, the petitioner's attorney submitted a sworn affidavit from the Circuit Clerk in Osceola stating that the petitioner's writ of mandamus was in fact filed and docketed on May 10, 1973, under case No. 5251. Thus, the Court finds that the petitioner filed an effective demand for trial and thereby activated his right to a speedy trial under § 43–1708.[2]

Having resolved the threshold issue of whether the petitioner filed a demand for a speedy trial, the Court may now determine if there has been a violation of § 43–1708. The terms of circuit court for the Osceola district of Mississippi County are from the third Monday in March until the third Monday in October. The petitioner was originally indicted in June, 1973, during the court's March term. However, this term of court should not be counted in calculating the number of terms of court which have passed between the petitioner's indictment and trial; for the petitioner fled the state on July 2, 1972, and thereby tolled the running of this term of court. *O'Neal v. State,* 253 Ark. 574, 487 S.W.2d 618, 623 (1973). Thus, when petitioner filed his writ of mandamus demanding a trial, he activated *ab initio* the running of the terms of court under § 43–1708. See *Davidson, supra,* 492 S.W.2d at 248. Under these circumstances, the petitioner's subsequent trial on March 18, 1974, (the third Monday in March) represented the second term of court following the filing of the petitioner's writ of mandamus. Thus, based upon the state Supreme Court's construction of § 43–

---

1. The following testimony took place during the petitioner's Rule 37 hearing:

   "*Court*: Do you have any evidence of any kind at all, Mr. Banks, to show the Court this instrument was ever filed in this Court or ever called to the attention of the Judge of the Court.

   "*Mr. Banks*: The only evidence I would have to offer would be the certified receipt signed by someone.

   "*Court*: Signed by someone?

   "*Mr. Banks*: I do not know the person who supposedly signed it. This is Osceola receipt for certified mail [sic]. This is certified mail receipt sent to the Clerk, Circuit Court, of Osceola, Arkansas [sic]. This is the only receipt Mr. Smith has ever given to me to verify this particular allegation."

2. The Court finds it difficult to understand how all of the parties and attorneys involved in the various proceedings were unable to determine the true identity of "Geneva Sirco." It also finds it difficult to understand why they were unable to locate the writ itself, since it was filed and docketed in the Clerk's office.

1708, this Court concludes that the petitioner's trial was within the time period provided for in this statute.

■ Finally, the petitioner alleges that the State violated his constitutionally protected right to a speedy trial under the Sixth Amendment. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court adopted an *ad hoc* balancing test to determine whether there has been an abridgment of an individual's constitutionally protected right to a speedy trial. The high Court enunciated . at least four factors which, while possessing no "talismanic qualities", could be considered by a court in conducting the "sensitive balancing process." Barker, *supra,* at 533, 92 S.Ct. 2182.

(1) *Length of the delay*: Ten months elapsed between the petitioner's demand for a speedy trial and his actual trial. While this delay might be considered excessive when compared to federal legislative standards for a "speedy trial" (18 U.S.C. § 3161, et seq.), the petitioner's trial still took place within the time provided for under the Arkansas speedy trial statute. Furthermore, the Arkansas Supreme Court has upheld the constitutionality of this statute. *Givens v. State,* 243 Ark. 16, 418 S.W.2d 629, *cert. denied,* 390 U.S. 956, 88 S.Ct. 1051, 19 L.Ed.2d 1149 (1968).

(2) *Reason for the delay*: Between May 10, 1973, and November 7, 1973, the petitioner was serving his eighteen-month sentence in the Mississippi State Penitentiary. Since the petitioner had filed a waiver of extradition, the State of Arkansas could have extradicted the petitioner during this period. However, as indicated *supra,* the State was not aware of the petitioner's writ and waiver of extradition. While this lack of knowledge was attributable to the State's failure to discover the petitioner's writ, the Court finds that the State did not intentionally delay the petitioner's trial.

(3) *Defendant's assertion of his right to a speedy trial*: The Court finds that the petitioner asserted his right to a speedy trial on May 10, 1973. However, the record indicates that the petitioner failed to make any subsequent demand for a speedy trial. Furthermore, even after the petitioner received a court-appointed attorney in January, 1974, he failed to file any motions for a speedy trial or to seek any ruling on his previously filed motion.

A review of an abstract of testimony in the petitioner's Rule 37 hearing indicates that he informed his attorney of the potential denial of his right to a speedy trial only *after* his March 18th trial. Thus, after his initial demand for a speedy trial, the petitioner did not reassert this right until he sought post-conviction relief following his trial in state circuit court.

(4) *Prejudice to the defendant*: During the evidentiary hearing the petitioner attempted to establish that the ten-month delay substantially prejudiced his defense, because he was unable to locate certain unnamed witnesses. The petitioner, however, did not clearly establish that he could have located these witnesses if he had been tried at an earlier date. Furthermore, the testimony of these unnamed witnesses was to be used to impeach the testimony of the prosecutor's chief witness, the petitioner's co-defendant in the burglary, rather than to exculpate the petitioner of his involvement in the alleged crime. All of the circumstances indicate that the delay of ten months did not actually prejudice petitioner.

After considering, balancing and weighing all of these factors, the Court concludes that the petitioner has not been deprived of his Sixth Amendment right to a speedy trial.

It is therefore Ordered that this petition for a writ of habeas corpus be, and it is hereby, denied.